IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 19-cv-03665-PAB-STV

ROSE A. HOLLOWAY,

    Plaintiff,

v.

FREEMONT COUNTY RE-1/CANON CITY HIGH SCHOOL,

    Defendant.

**ORDER ACCEPTING MAGISTRATE RECOMMENDATION**

This matter is before the Court on the Recommendation of United States Magistrate Judge [Docket No. 72]. The Recommendation addresses defendant's Motion for Summary Judgment [Docket No. 66]. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I.  UNDISPUTED FACTS

The magistrate judge adopted the facts in defendant's motion for summary judgment, noting that plaintiff failed to comply with the Practice Standards of this Court in her response to defendant's motion for summary judgment. Docket No. 72 at 1 n.1. In plaintiff's response, she did not "admit or deny the asserted material facts set forth by the movant" and she did not provide "brief factual explanation[s] of the reason(s) for the denial and a specific reference to material in the record supporting the denial" for any facts she disputed in defendant's motion. *See* Section III.F.3.b.iv. of Practice Standards (Civil Cases) of Chief Judge Philip A. Brimmer; Docket No. 68. The practice

standards state that failure to follow the standards "may cause the Court to deem certain facts as admitted." *Id.* at III.F.3.b.ix. The Court agrees with the magistrate judge that plaintiff has failed to dispute or deny the facts in defendant's summary judgment and therefore the magistrate judge's statement of the undisputed facts in this case is correct and are reproduced below.[1]

1. Defendant Fremont County RE-1 is a public school district serving approximately three thousand five hundred students from early childhood through twelfth grade and has approximately five hundred employees. The School District has a specific policy committed to providing a workplace free from discrimination of any kind, including discrimination based on race/national origin. Mot., Ex. A, Aff. of George Welsh, ¶¶ 3–4; School District Policy AC-E 1.[2]

2. On June 15, 2018, plaintiff submitted her Cañon City School Online Application for various positions at the School District, including as a Special Education position at Cañon City High School ("CCHS"). Mot., Ex. B, Pl.'s Dep. at 29:22–30:7; 30:20–31:1; Ex. C at 2, Pl.'s Application with the School District; Ex. D, ¶¶ 3–4, Aff. of Jamie Davis.

3. The School District's online employment application did not request plaintiff to

---

[1] Plaintiff's argument in her objection that facts in the defendant's motion are disputed fails, since arguments raised for the first time in an objection are waived. *Marshall v. Chater*, 75 F. 3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived."); *see also Maurer v. Idaho Dep't of Corr.*, 799 F. App'x 612, 614 n.1 (10th Cir. 2020) (unpublished).

[2] *See* School District Policy AC-E-1 available at: https://www.canoncityschools.org/board-of education/board-pol

2

identify her race/national origin. Mot., Ex. B at 31:2–24; Ex. D at ¶¶ 3–4; *see generally*, Ex. C.

4. On June 20, 2018, School District employees Bill Summers, the principal at CCHS, and two other principals interviewed plaintiff for the positions she sought. Mot., Ex. B at 28:3–24; Ex. D, ¶ 4; Ex. E at 2, June 21, 2018 Cañon City Schools Employment Recommendation/Change Form.

5. On June 21, 2018, at approximately 8:30 AM, the School District's Human Resources Department prepared and sent plaintiff's online application and attachments to Principal Summers. Mot., Ex. C at 1; Ex. D, ¶ 4.

6. Nowhere within plaintiff's application materials forwarded to Principal Summers does it indicate plaintiff's race/national origin as Hispanic. *See generally*, Mot., Ex. C; see also Ex. B at 32:19–23; Ex. D, ¶¶ 4–5.

7. On June 21, 2018, Principal Summers recommended that the School District offer plaintiff the position she sought as a Special Education teacher at CCHS. Mot., Ex. D, ¶ 4; Ex. E at 1–2; Ex. B at 25:12–26:5.

8. On June 25, 2018, the School District, by and through its Board of Education ("School Board"), formally offered plaintiff the CCHS Special Education Teacher position she sought and provided plaintiff with a one-year Licensed Teacher Contract for the period of August 13, 2018, through May 24, 2019. Mot., Ex. F, Offer Letter and Contract. On July 18, 2018, plaintiff accepted her one-year appointment by executing the contract. *Id.*

9. At CCHS, plaintiff acted as an Individual Education Plan ("IEP") Manager for

students on her caseload. Her CCHS supervisors were Siena Wamsganz, CCHS's Case Manager, and CCHS Principal Summers. Mot., Ex. B at 29:4–16.

10. Shortly after the school year began, on August 27, 2018, Ms. Wamsganz notified Tim Renn, the School District's Director of Special Services, of a concern that parents of two students in plaintiff's CARE class withdrew after the "one day they spent in there made them feel like a preschooler." Ms. Wamsganz notified Mr. Renn that "perhaps Rose missed the mark in relating the course content and purpose of the class when she introduced it to her students." Mot., Ex. G at ¶¶ 3–5, Aff. of Shaun Kohl; Ex. H, Wamsganz Aug. 27, 2018 email to Tim Renn.

11. On September 7, 2018, Principal Summers provided plaintiff with an observation of her CARE class. Therein, Mr. Summers noted that: (a) Ms. Holloway failed to post a daily target of "Who will do what, how?;" (b) that "three students [were] totally disengaged; one causing a distraction to the rest of the class;" and (c) a concern that Ms. Holloway was not engaging the single female student in her class. Mot., Ex. G, ¶¶ 3–5; Ex. I¸ Summers' Sept. 7, 2018 Observation of Plaintiff; Ex. J, ¶¶ 3; 6, Aff. of Bill Summers.

12. At or near the first two months of the 2017–2018 school year, plaintiff suspects that her race and national origin were made known to the CCHS administration because "if [she] mentioned [her] ethnicity" a co-teacher, Mrs. Schott with whom plaintiff shared a classroom, may have overheard Plaintiff tell a student that she identified as Hispanic. Mot., Ex. B at 34:14–36:7. Ms. Schott never discussed Plaintiff's race or national origin with plaintiff, and plaintiff never witnessed Ms. Schott mentioning plaintiff's Hispanic ethnicity to anyone at the School District including but not

4

limited to Principal Summers. *Id*. at 36:8–37:1; 46:11–17.

13. There are no documents whatsoever demonstrating that plaintiff's race and nationality was confirmed by Principal Bill Summers and/or the CCHS administration in October 2018. Mot., Ex. B at 52:18–23.

14. No individuals at the School District ever asked plaintiff about her race or national origin. Ex. B at 32:8–15.

15. On September 25, 2018, a CCHS school counselor, Stacy Andrews, informed plaintiff that her students were complaining about the "frustration with the pace of [her] class" and that the "amount/number of blogs in such a short period of time is overwhelming." Mot., Ex. G, ¶¶ 3–5; Ex. K, Andrews' Sept. 25, 2018 email to Plaintiff. Plaintiff responded by stating her belief that her assignments were not overwhelming and replying, "I know what I am doing." *Id.*

16. On October 3, 2018, Ms. Wamsganz forwarded Principal Summers a list of concerns regarding Ms. Holloway including: (a) her first IEP for one of her students being "filled with mistakes and information that would put it out of compliance" with the Colorado Department of Education; (b) the tardiness of her draft IEP submittal; (c) her refusal to accept feedback and/or recommended changes; and (d) the need to provide Ms. Holloway "comprehensive training" despite having been previously afforded prior "transition expectations" training from other CCHS staff members. Mot., Ex. G, ¶¶ 3–5; Ex. L, Wamsganz's Oct. 2, 2018 email to Principal Summers.

17. On October 9, 2018, three months after Principal Summers interviewed and offered plaintiff her position at CCHS and less than two months into the 2017–2018 school year, Principal Summers placed Plaintiff on a Performance Improvement Plan

("PIP"). Mot., Ex. J, ¶¶ 7; Ex. M, Plaintiff's Oct. 9, 2018 Performance Improvement Plan. Plaintiff's PIP listed and described four areas of concern including: (a) IEP accomplishment and staffing fulfillment; (b) assessment and assignment diversity, appropriateness, and frequency; (c) workplace relationships; and (d) classroom management. Mot., Ex. J, ¶ 7; Ex. M at pp. 1–2. Due to these areas of concern, plaintiff's PIP numerically listed specific improvement goals (i.e., Nos. 1–11) and a mandatory timeline for their completion. Ex. J, ¶ 7; Ex. M at pp. 3–4. This timeline required plaintiff to comply with: Improvement Goal No. 1 no later than November 2, 2018; Improvement Goals Nos. 2–10 no later than December 20, 2018; and Improvement Goal No. 11 no later than Jan. 31, 2019. Ex. M at 4. The PIP also stated:

> Effective immediately, you are placed on a PIP through the end of February 2019. During this time, you are expected to make regular progress on the plan outlined above. If there is no significant improvement to indicate that the expectations and goals will be met within the timeline indicated in this PIP, you may receive an evaluation rating below "Effective" at the mid-term evaluation cycle milestone. Finally, failure to meet these standards or regression beyond the midterm evaluation cycle milestone can result in a final evaluation rating below "Effective." According to the Colorado Department of Education process, and as you are on probationary status, you may be non-renewed."

*Id.* On this date, plaintiff met and reviewed her PIP with Principal Summers, received a copy of it, and acknowledged receipt via her signature. *Id*. at 5; Ex. B at 65:15–67:12.

18. On December 19, 2018, Principal Summers again observed Ms. Holloway's class and had "some concerns." These included: (a) a failure to present a daily target to answer the question "Who will do what, how;" (b) her students' low level of engagement, i.e. ritual compliance (low attention + low commitment); (c) that her students did not know the purpose of the classroom video presented and there was no

discussion or assignment of it thereafter; (d) a lack of equal access and consistency amongst a co-taught classroom environment; and (e) a concern for plaintiff's respect and fairness towards her students as she described one half of the classroom as "good" while the other half "was 'lazy, complaining, and bad.'" Mot., Ex. J at ¶ 8; Ex. N, Summers' Dec. 19, 2018 Observation of Plaintiff.

19. On December 20, 2018, Principal Summers met with plaintiff and evaluated her PIP progress. Mot., Ex. J, ¶ 9; Ex. O, Plaintiff's Dec. 20, 2018 PIP. At this meeting, Plaintiff was informed that she had not met in full Improvement Goals Nos. 2, 3, 4, 9, and 10, contrary to the progress mandated by that date. Ex. J, ¶ 9; Ex. O at 3–4; 6. Plaintiff was also provided detailed feedback substantiating the reasons why Principal Summers did not believe she met those goals. Ex. O at 3–4. On this date, plaintiff reviewed her updated PIP with Principal Summers, received a copy of it, and acknowledged receipt via her signature. *Id.* at 5; Ex. J at ¶ 9.

20. On January 30, 2019, Principal Summers and CCHS Assistant Principal Michelle Johnson met with Plaintiff to conduct her mid-year review where they also provided plaintiff with updated PIP detailing her progress to date. Mot., Ex. J, ¶ 11; Ex. P, Plaintiff's Jan. 30, 2019 PIP; Ex. Q, ¶ 4, Aff. of Michelle Johnson; Ex. R, Johnson's Notes of Jan. 30, 2019 Meeting with Plaintiff. At this meeting, plaintiff was again informed that she had not met Improvement Goals Nos. 2, 3, 4, 9, and 10, contrary to the improvements expected prior to that date. Ex. J, ¶ 11; Ex. Q, ¶ 4; Ex. P at 3–5. She was also provided detailed feedback substantiating the reasons why Principal Summers did not believe she met those goals. Ex. P at 3–5. On this date, plaintiff reviewed her updated PIP with Principal Summers, received a copy of it, and

acknowledged receipt via her signature. *Id.* at 6; Ex. J, ¶ 11; Ex. Q, ¶ 4.

21. Pursuant to Section 8–4 of the Master Agreement between the School District and the Cañon City Education Association, at their January 30, 2019 meeting, Principal Summers provided plaintiff a copy of his written recommendation to non-renew her contract for the 2019–2020 school year. Mot., Ex. J, ¶¶ 12; Ex. S, Summers' Intent to Non-Renew Letter; Ex. T at 16, Master Agreement between School District and Cañon City Education Association; Ex. Q, ¶ 4; *see also* Ex. R at 1.

22. Also at the January 30, 2019 mid-year evaluation meeting, Principal Summers suggested that plaintiff consider submitting her resignation instead of being non-renewed as he could not serve as plaintiff's reference should she be subject to the latter. Principal Summers requested that plaintiff provide her resignation, if she chose to do so, by February 15, 2019. Mot., Ex. J, ¶ 12; Ex. R at 1–2; Ex. Q, ¶ 4. After this meeting, Principal Summers sent plaintiff's PIP packet and his recommendation for non-renewal to the School District's Director of Human Resources Misty Manchester. Ex. J, ¶ 13; Ex. P at 6.

23. At no time during the above-mentioned evaluation process and meetings did Ms. Holloway ever express a belief that she was being discriminated against on the basis of her race/national origin. Mot., Ex. J, ¶¶ 14; Ex. Q at ¶ 5.

24. At no time during the above-mentioned evaluation process and meetings did Principal Summers ever learn that plaintiff identified herself as Hispanic. Ex. J, ¶ 14; Ex. Q, ¶ 5.

25. On February 15, 2019, Principal Summers and Assistant Principal Johnson again met with plaintiff to discuss her non-renewal or potential resignation. Mot., Ex. J,

8

¶ 15; Ex. Q, ¶ 7; Ex. U, Johnson's Notes of Feb. 15, 2019 Meeting with Plaintiff. At plaintiff's request, Principal Summers extended the period that he would accept a letter of resignation to February 20, 2019, and he explained to plaintiff that should she do so she could serve out the remainder of her annual contract with full pay and benefits even if she did "not come to work." Should she decide not to resign, Principal Summers again informed plaintiff that he would recommend the non-renewal of her contract at the end of the 2018–2019 school year, and he could not serve as a reference. Ex. J, ¶¶ 15; Ex. V, Summers' Feb. 15, 2019 letter to plaintiff; Ex. Q, ¶ 7; Ex. U.

26. On February 20, 2019, plaintiff requested and received a one-day extension from Principal Summers to submit her letter of resignation. Mot., Ex. G, ¶¶ 3–5; Ex. W, Feb. 20, 2019 email between plaintiff and Principal Summers.

27. On February 21, 2019, plaintiff briefly met with Principal Summers to provide her letter of resignation. Mot., Ex. J, ¶ 17; Ex. X, Plaintiff's Feb. 21, 2019 Resignation Letter; Ex. G, ¶¶ 3–5; Ex. Y, Plaintiff's Feb. 21, 2019 email to Siena Wamsganz. Plaintiff's resignation letter was then forwarded to the District's Director of Human Resources Misty Manchester and Superintendent George Welsh for School District approval that same day. Ex. J, ¶ 17; Ex. X. Therein, plaintiff's resignation letter blamed Principal Summers for making her feel like an "unsafe target at CCHS" in which she allegedly could not "continue without worrying for my safety." Plaintiff also claimed that Principal Summers was "bias[ed]" against her. *Id.* Plaintiff's resignation letter makes no mention of any unlawful discrimination whatsoever including but not limited to discrimination based on Plaintiff's race/national origin. Ex. X; *see also* Ex. J at 17; Ex. A, ¶ 9.

9

28. The next day, on February 22, 2019, Principal Summers and Assistant Principal Johnson met plaintiff in her classroom and informed her that the District would not accept her letter of resignation; she was being placed on immediate administrative leave for the rest of the school year; and Superintendent Walsh intended to submit his non-renewal recommendation to the District's Board of Education for approval. Mot., Ex. J, ¶ 19; Ex. Q, ¶ 9; see also Ex. A at ¶ 9; Ex. Z, Superintendent Welsh's Feb. 22, 2019 email to District employees. Principal Summers then requested that plaintiff remove her personnel belongings from CCHS and return her CCHS keys and badge. Ex. J, ¶ 19; Ex, Q, ¶ 9. Due to the amount of plaintiff's personal belongings in her classroom (including furniture), Principal Summers and Assistant Principal Johnson asked plaintiff if she needed help packing/moving her belongings. Plaintiff stated that she did, and both Principal Summers and Assistant Principal Johnson assisted plaintiff by bringing her belongings to her car. At no time did Principal Summers or Assistant Principal Johnson force or march plaintiff out of the building. *Id.* At this time, plaintiff did not mention a belief that she was being discriminated against due to her race/national origin. Ex. J, ¶ 20; Ex. Q, ¶ 10.

29. Later that day, on February 22, 2019, plaintiff requested and met with School District Superintendent George Walsh and Director of Human Resources Misty Manchester regarding her non-renewal. Mot., Ex. B at 48:13–49:15; 50:7–21; Ex. AA at 3:14–4:13, Transcript of Recorded Meeting between Rose Holloway, George Welsh, and Misty Manchester, Ex. A, ¶ 10; Ex. BB, Manchester's Feb. 22, 2019 Letter to Plaintiff.

30. At this meeting, Superintendent Welsh explained why he decided not to accept plaintiff's resignation letter. Mot., Ex. AA at 10:21–12:16; see also Ex. A, ¶ 10. Superintendent Welsh and Ms. Manchester also confirmed that plaintiff was being placed on paid administrative leave for the rest of the school year, and she would continue to receive full pay and benefits through the end of her contract term. Ex. AA at 8:13–10:12; 21:12–22:4; Ex. BB. Plaintiff was also informed that her contract non-renewal would be placed before the District's Board of Education for approval on February 25, 2016. Ex. AA at 21:12–14; Ex. BB.

31. During her meeting with Superintendent Welsh and Ms. Manchester, plaintiff did not mention a belief that she was being discriminated against based on her race/national origin. *See generally*, Ex. AA.

32. On February 25, 2019, the District's Board of Education voted to non-renew plaintiff's contract for the 2019–2020 school year. Ex. D, ¶¶ 3–4; Ex. CC, Manchester's Feb. 26, 2019 Letter to Plaintiff.

33. Prior to receiving and reviewing a copy of plaintiff's underlying Equal Employment Office Commission ("EEOC") Charge of Discrimination alleging race/national origin discrimination and retaliation, neither Principal Summers nor Superintendent Welsh knew that plaintiff identified herself as Hispanic. Mot. Ex. J, ¶¶ 14; 16–17; 20–21; Mot. Ex. A, ¶¶ 8–9; 12; *see also* Ex. D, ¶¶ 5–7.

## II. PROCEDURAL HISTORY

On December 23, 2019, plaintiff filed suit, alleging: (1) discrimination in violation of Title VII of the Civil Rights Act, (2) retaliation in violation of the same, and (3) a

common law claim of wrongful discharge in violation of public policy. *See* Docket No.1 at 9-12. On February 23, 2021, the Court dismissed plaintiff's public policy claim. Docket No. 65 at 7. On April 20, 2021, defendant moved for summary judgment on plaintiff's Title VII claims. *See* Docket No. 66. Magistrate Judge Tafoya issued a recommendation on defendant's motion on January 26, 2022. Docket No. 72. Plaintiff filed her objection on February 18, 2022, Docket No. 76, to which defendant responded. Docket No. 77.

### III. LEGAL STANDARD

The Court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). An objection is "proper" if it is both timely and specific. *United States v. One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996). A specific objection "enables the district judge to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute." *Id.*

In the absence of an objection, the district court may review a magistrate judge's recommendation under any standard it deems appropriate. *See Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991); *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."). The Court therefore reviews the non-objected to portions of the recommendation to confirm that there is "no clear error on the face of the record." Fed. R. Civ. P. 72(b), Advisory Committee Notes. This standard of review

is something less than a "clearly erroneous or contrary to law" standard of review, Fed. R. Civ. P. 72(a), which in turn is less than a de novo review. Fed. R. Civ. P. 72(b). Because plaintiff is proceeding pro se, the Court will construe her objections and pleadings liberally without serving as her advocate. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

## IV. ANALYSIS

Magistrate Judge Tafoya recommends that defendant's motion for summary judgment be granted. *See* Docket No. 72 at 16. Specifically, the magistrate judge concluded that plaintiff did not provide direct evidence of discrimination or establish a *prima facie* case of discrimination to support her race/national origin discrimination claim. *Id.* at 13-15. Magistrate Judge Tafoya also concluded that plaintiff's retaliation claim is not based on a protected activity. *Id.* at 15-16. Plaintiff objects, arguing that her discrimination claim should not be dismissed because she has demonstrated a pattern of discrimination and that it is not her burden to prove that her ethnicity was known to defendants. Docket No. 76 at 2-3. Plaintiff argues her retaliation claim should not be dismissed because she was denied her right to work and because she made a claim of discrimination which plaintiff says is a protected activity. *Id.* at 1-2. Defendant argues that plaintiff's arguments have already been addressed by the magistrate judge and that plaintiff does not make any arguments that would lead to a different result. Docket No. 77 at 2-3.

### A. Discrimination

Title VII makes it unlawful "for an employer . . . to discharge any individual . . .

because of such individual's race, color, religion, sex, or national origin." *See* 42 U.S.C. § 2000e-2(a)(1). Such claims can be demonstrated either by "direct evidence that a workplace policy, practice, or decision relies expressly on a protected characteristic" or by "using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1345 (2015). "When a Title VII plaintiff presents direct evidence of discrimination, the *McDonnell Douglas* burden-shifting analysis doesn't apply." *See Fassbender v. Correct Care Sols., LLC*, 890 F.3d 875, 883 (10th Cir. 2018) (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985)). "Direct evidence demonstrates on its face that the employment decision was reached for discriminatory reasons." *Id.* (citation omitted). Evidence is direct only if it "proves the existence of a fact in issue without inference or presumption." *Id.* (citation omitted).

A plaintiff may also meet her burden with circumstantial evidence. *See Fassbender*, 890 F.3d at 884. To consider allegations made with circumstantial evidence, the Court applies the *McDonnell Douglas* three-step burden-shifting framework. *See id.* (citing *Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1315-16 (10th Cir. 2017)). Under the first step, the plaintiff must "establish a *prima facie* case of discrimination." *Id.* (citing *Bird v. W. Valley City*, 832 F.3d 1188, 1200 (10th Cir. 2016)). To make out a *prima facie* race-based discrimination case, a plaintiff must show she (1) is a member of a protected class, (2) suffered an adverse employment action, and (3) was treated less favorably than similarly situated employees not in the protected class. *See, e.g., Trujillo v. Univ. of Colo. Health Sci. Ctr.*, 157 F.3d 1211, 1215 (10th Cir.

1998).

Plaintiff alleges that defendant discriminated against her because she is Hispanic, in violation of Title VII. Docket No. 68 at 2. The magistrate judge ruled that plaintiff does not submit any evidence of direct discrimination, and plaintiff does not object to this finding. Docket No. 72 at 13; *see* Docket No. 76 at 1-2. The magistrate judge ruled plaintiff only submits "pure speculation that her Hispanic race/national origin was known" to anyone with decisionmaking authority on plaintiff's contract and so plaintiff necessarily cannot make out a *prima facie* case of discrimination. Docket No. 72 at 14. The arguments that plaintiff makes in her objection – that plaintiff may have said she was Hispanic, that a fellow teacher overheard, and based on that fellow teacher overhearing, an administrator could find out that plaintiff is Hispanic – have no factual support. Rather, the undisputed facts show that plaintiff was not asked about her race by anyone at the school, that the school had no documentation stating plaintiff's race or national origin, and that her personnel file did not identify plaintiff as Hispanic. *Id.*, ¶¶ 13-14 .

In her objection, plaintiff argues that she did not need to "know the date and hour that [decisionmakers on her contract] were made aware, but only to show that it became apparent when there was a change in their behavior" that they knew plaintiff was Hispanic. Docket No. 76 at 3. The magistrate judge did not rule that plaintiff had to identify the exact time any decisionmakers became aware of plaintiff's race/national origin, but instead hold that plaintiff had not raised a genuine dispute of material fact that defendant knew plaintiff was Hispanic at any time before she submitted her letter of resignation. Docket No. 72 at 14-15. The Court agrees with the magistrate judge that,

without evidence that a defendant knows a plaintiff's race, "a plaintiff cannot establish a *prima facie* [discrimination case] because it is impossible to infer that the decision was due to discriminatory intent." *Owens v. Donahoe,* 913 F. Supp. 2d 1055, 1062 (D. Colo. 2012). Plaintiff claims there was a change in behavior when decisionmakers found out about plaintiff's race/national origin; however, plaintiff does not point to any evidence that decisionmakers knew that plaintiff is Hispanic. Plaintiff's objection fails to raise a genuine dispute of material fact.

Plaintiff also argues that she has demonstrated defendant's pattern of discrimination against Hispanic people that can provide circumstantial evidence of discrimination. Docket No. 76 at 2-3. While the Court agrees with plaintiff that evidence of a pattern of discrimination can constitute circumstantial evidence of discrimination, this argument does not refute the undisputed fact that defendant's decisionmakers did not know plaintiff is Hispanic and so it fails to rebut or show a material issue of disputed fact. Any evidence of a pattern of discrimination against Hispanic employees cannot apply to plaintiff without evidence defendant knew plaintiff is Hispanic. Additionally, plaintiff does not point to any evidence in the undisputed facts that shows a pattern of discrimination. *See id.* at 1-2. The Court finds no error in the recommendation that this claim be dismissed.

### B. Retaliation

Plaintiff's remaining claim is based on alleged retaliation for protected activity. Title VII forbids retaliation against an employee because she has "opposed" any practice made unlawful by Title VII, or because she has "participated . . . in an

investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Where there is no direct evidence of retaliation, the burden-shifting analysis established in *McDonnell Douglas* also applies to retaliation claims. *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1229-30 (10th Cir. 2000); *see also Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (a plaintiff can prove retaliation "by relying on the three-part McDonnell Douglas framework"). To establish a *prima facie* Title VII retaliation claim, a plaintiff must show: (1) engagement in activity protected under Title VII, (2) a "materially adverse" employment action, and (3) a causal connection between the protected activity and the materially adverse employment action. *Singh v. Cordle*, 936 F.3d 1022, 1042 (10th Cir. 2019) (citing *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006)).

Plaintiff's retaliation claim alleges that plaintiff submitted a resignation letter speaking out against discrimination and that defendant retaliated by refusing to accept plaintiff's letter, forcing plaintiff out of the building, and terminating her employment. Docket No. 72 at 15. The undisputed facts indicate that plaintiff mentioned bias against her in passing, but she did not make any claims about race-based or national origin-based discrimination in her letter of resignation. *Id*. at 8-9, ¶ 27; *see* Docket No. 66-24. The undisputed facts also indicate that plaintiff, while she was accompanied to her car, was not forced or marched out of the building. Docket No. 72 at 9, ¶ 28. After submitting her letter of resignation, plaintiff was placed on administrative leave for the remainder of the school year and her contract was not renewed. *Id.* at 10, ¶¶ 30, 32.

The magistrate judge recommends granting summary judgment for the

defendant because plaintiff cannot make out a *prima facie* retaliation case, specifically because the undisputed facts do not show that plaintiff engaged in a protected activity. *Id.* at 15-16. The magistrate judge noted that plaintiff's letter did not address any conduct that is illegal under Title VII because it failed to identify any bias or discrimination based on race/national origin. *Id.*

Plaintiff argues that her use of the word "bias" in her resignation letter instead of the word "discrimination" should not change the outcome of her claim. Docket No. 76 at 1-2. Plaintiff misunderstands the recommendation. The magistrate judge did not rule that plaintiff needed to use the word "discrimination" to show a protected activity, but instead that plaintiff had not shown evidence that plaintiff had stated that any bias or discrimination against plaintiff was based on her race/national origin. Docket No. 72 at 15-16. The Court agrees with the magistrate judge that the missing link to race or national origin in plaintiff's claim of retaliation is fatal to plaintiff's claim given that "a vague reference to discrimination and harassment without any indication that this misconduct was motivated by race . . . does not constitute protected activity." *Anderson v. Academy School Dist*. *20*, 122 F. App'x 912, 916 (10th Cir. 2004) (unpublished). Plaintiff also argues that forcing her out of the school was an adverse action sufficient to demonstrate retaliation. Docket No. 76 at 1. However, there is no support for this claim in the undisputed facts, which suggest only that plaintiff was escorted out of the building because she stated she needed help carrying her personal belongings. Docket No. 72 at 9, ¶ 28. Even if plaintiff provided support for her claim that walking her out of the building was an adverse action, that is not enough to support a retaliation claim because she still cannot show she engaged in a protected activity. Summary judgment

is therefore warranted.

Plaintiff also argues that, although submission of "a resignation letter is not a protected activity, the right to work is" and that she was coerced into writing a letter of resignation. Docket No. 76 at 1. Nothing in the undisputed facts supports plaintiff's argument that she was coerced into writing a letter. See Docket No. 72 at 7, ¶ 22. Additionally, to the extent plaintiff alleges that forcing her to write the letter was an adverse action, plaintiff has not alleged any protected activity that occurred before she wrote her letter. And plaintiff does not state what forcing her to write a letter would be in retaliation for.

Plaintiff does not demonstrate a protected activity with any facts in the record and fails to raise a disputed issue of material fact showing that her letter of resignation constitutes a protected activity by referencing race-based or national origin-based discrimination. *See* Docket No. 76 at 1-2. As plaintiff has not provided evidence of the first element of a *prima facie* retaliation claim, the Court finds no error in the magistrate judge's recommendation that defendant is entitled to summary judgment on plaintiff's retaliation claim.

## V. CONCLUSION

It is therefore

**ORDERED** that the Recommendation of United States Magistrate Judge [Docket No. 72] is accepted. It is further

**ORDERED** that plaintiff's Motion of Objection to the Recommendation of US Magistrate Judge for Summary Judgment Document 72 [Docket No. 76] is

**OVERRULED**.  It is further

ORDERED that the Defendant's Motion for Summary Judgment [Docket No. 66] is **GRANTED**.  It is further

ORDERED that defendant is awarded its costs, to be taxed by the Clerk of the Court pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.  It is further

ORDERED that this case is closed.

DATED March 28, 2022.

                                        BY THE COURT:

                                        PHILIP A. BRIMMER
                                        Chief United States District Judge